1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

WILLIAM KENNERSON,

Petitioner,

vs.

WILLIAM KNIPP, Warden,

Respondent.

Civil No.    13cv157 GPC (WMc)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

**I.**

**FEDERAL PROCEEDINGS**

William Kennerson (hereinafter "Petitioner" or "Kennerson"), is a state prisoner proceeding *in pro per* with a Petition for a Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254.  (ECF No. 1.)  Petitioner was convicted by a San Diego County Superior Court jury on July 18, 2008, of seven counts of molestation. (Pet., ECF No. 1 at 21; Lodgment No. 1, ECF No. 13-3 at 128; 131-137.[1])  Petitioner was

---

[1]  When citing to documents filed with the Court's Electronic Case Filing ("ECF") system, the Court will refer to the pages assigned by that system.

sentenced to a total term of 57-years-to-life in prison.  (Lodgment No. 1, ECF No. 13-3 at 140-41.)

In his federal Petition, Kennerson alleges his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated because appellate counsel rendered ineffective assistance by failing to raise the following contentions in the appellate briefing:

1.) Trial counsel's failure to object to the second amended information, which contained different dates than those identified in the first amended information (Memorandum of Points and Authorities in Support of Petition ["Pet. Mem."], ECF No. 1 at 31.)**;**

2.) Failure of the trial court to grant a continuance of trial to allow a witness to be recalled to the stand by the defense.  (Pet. Mem., ECF No. 1 at 32.); and

3.) The trial court's allowance of and the prosecution's use of false testimony. (Pet. Mem., ECF No. 1 at 27, 32-33.)

Petitioner also requests an evidentiary hearing in support of his ineffective assistance of appellate counsel claims.  (Pet. Mem., ECF No. 1 at 12 .)

Respondent has filed an Answer to the Petition ("Ans."), along with a supporting Memorandum of Points and Authorities ("Ans. Mem."), and has lodged portions of the state court record.  (ECF Nos. 12-1, 13.)  Respondent contends federal habeas relief is unavailable with respect to Petitioner's claims because the state court's adjudication constituted an objectively reasonable application of clearly established federal law. (Ans. Mem. at 9.)  After receiving an extension of time, Petitioner filed a Traverse on June 4, 2013.  (ECF No. 19.)

///

///

///

///

///

## II.

### STATE PROCEEDINGS

On July 18, 2008, a jury found Petitioner guilty of four counts of committing a lewd act upon a child in violation of California Penal Code s 288(a) and three counts of committing a forcible lewd act upon a child in violation of California Penal Code s 288(b)(1).  In addition, the jury found true that: (1) Petitioner committed the offenses against more than one victim; and (2) Petitioner had substantial sexual conduct with a child under fourteen years of age.  (Lodgment No. 1, ECF No. 13-3 at 131- 137.)  On October 30, 2008, Petitioner was sentenced to a term of 45 years to life plus 12 years in state prison. (Lodgment No. 1, ECF No. 13-3 at 140- 141.)

Petitioner appealed his conviction to the California Court of Appeal, claiming: (1) his due process rights were violated by the trial court's denial of his request for a continuance to recall witnesses; (2) the trial court's failure to give a jury instruction *sua sponte* on child sexual abuse accommodation syndrome constituted error; (3) the trial court erred in granting the jury's request to view a videotaped interview during deliberations; and (4) the trial court erred when it precluded Petitioner from cross examining the victim of an uncharged offense about her mental state at the time of an investigative interview.  (Resp't Lodgment No. 3.)  On June 10, 2010, the appellate court affirmed Petitioner's conviction in a reasoned opinion.  (Resp't Lodgment No. 6.)  Petitioner filed a petition for review with the California Supreme Court on July 20, 2010, raising claims one, two and four above, which were raised in the court of appeal. (Resp't Lodgment No. 7.)  The California Supreme Court denied the petition without comment or citation on September 22, 2010.  (Resp't Lodgment No. 8.)

On August 1, 2011, Kennerson filed a Petition for Writ of Habeas Corpus in the California Superior Court, County of San Diego, East County Division, claiming ineffective assistance of appellate counsel for failure to raise the following issues on appeal: (1) ineffective assistance of trial counsel for failure to object to the filing of a second amended information on the day of trial; (2) ineffective assistance of trial counsel

for failure to request CALCRIM jury instruction 1192 and/or 1193; (3) error of the trial court for failure to compel the production of witnesses Socorro and Christian; and (4) failure to prove all the elements of count five of the second amended information. (Resp't Lodgment No. 9.) On September 30, 2011, the state superior court denied the Petition in a reasoned decision. (Resp't Lodgment No. 10.)

Kennerson filed a Petition for Writ of Habeas Corpus in the California Court of Appeal on November 11, 2011, again claiming ineffective assistance of appellate counsel for failure to raise the following issues on appeal: (1) ineffective assistance of trial counsel for failure to object to the filing of a second amended information on the day of trial; (2) ineffective assistance of trial counsel for failure to request CALCRIM jury instruction 1192 and/or 1193; (3) error of the trial court for failure to compel the production of witnesses Socorro and Christian; and (4) failure to prove all the elements of count five of the second amended information. (Resp't Lodgment No. 11.) On December 6, 2011, the Court of Appeal denied the Petition in a written decision. (Resp't Lodgment No. 12.)

On February 16, 2012, Kennerson filed another Petition for Writ of Habeas Corpus in the California Supreme Court , and raised the same claims made in his previous state habeas petitions filed on August 1, 2011 and November 11, 2011. (Resp't Lodgment No. 13.) The California Supreme Court denied the Petition without comment or citation on June 13, 2012. (Resp't Lodgment No. 14.)

Kennerson filed a Petition for Writ of Habeas Corpus in the California Supreme Court on August 6, 2012, which raised the same claims made in his previous state habeas petitions filed on August 1, 2011; November 11, 2011 and February 16, 2012. (Resp't Lodgment No. 15.) The California Supreme Court denied the Petition on October 24, 2012, citing to *In re Clark*, 5 Cal. 4th 750, 767-769 (1993). (Resp't Lodgment No. 16.)

# III.

# FACTUAL BACKGROUND

The following statement of facts is taken from the unpublished appellate court opinion affirming Petitioner's conviction on direct review. This Court gives deference to state court findings of fact and presumes them to be correct. *See Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

1. *Christian*

In 1999, when Christian was 11 or 12 years old, her mother began dating Kennerson. At that point in time, Christian, her mother and her brother lived in an apartment in El Cajon. Later in 1999, Christian, her mother and her brother moved into Kennerson's Jamul home. Kennerson molested Christian both when her family was living in the apartment in El Cajon and later when they moved into his home.

On one occasion, Kennerson forced Christian to rub her hand up and down on his penis while her brother and mother were in the house. Christian did not report the assault to her mother because she was frightened. On another occasion, Kennerson forcibly sodomized Christian. While he was sodomizing Christian, Kennerson put his hand over her mouth to muffle her screams. Christian's brother knocked on the door and asked if everything was alright; Kennerson responded that he was helping Christian. Kennerson told Christian that if she told anyone he would do it again and hurt her family.

When the family was living in Kennerson's home, Christian's mother noticed Kennerson coming from Christian's room and that Christian was terrified of sleeping alone. She became suspicious and moved out of the home three months after moving into it.

In 2002, after her mother's relationship with Kennerson had ended, Christian told her mother about the molestations and they both reported the incidents to the police.

2. *Carla*

After Kennerson's relationship with Christian's mother ended, he met another woman, Leticia. Kennerson married Leticia in 2002 and she and her five-or six-year-old daughter Carla moved into his home. Between 2003 and 2004 Kennerson molested Carla. He touched her breasts and vagina over her clothes.

Carla reported the molestations to her mother when she was eight and after she learned Kennerson was not her biological father. Leticia was not sure Carla was being truthful because previously Carla had made false accusation about an uncle.

Carla met with a social worker in 2006 and a videotaped forensic interview was conducted. Initially in the interview, Carla reported that yet another uncle had molested her and her cousin and denied that any other molestation had occurred. However, later in the interview, Carla described how Kennerson had molested her.

*3. Nancy*

About 10 years before he molested Christian and Carla, Kennerson began molesting an 11- or 12-year-old girl Nancy, who, along with her mother, lived in Kennerson's home. Kennerson rubbed Nancy's breasts over her nightgown when she was lying down or sleeping. One time when she was 17 years old, Nancy woke up and Kennerson was digitally penetrating her vagina. Nancy told her mother about the molestations when she was 17.

(Lodgment No. 6; ECF No.13-22; *People v. Kennerson*, D054115, Slip Op. at 2-3.)

## IV.

## PETITIONER'S CLAIMS

The Petition presents the following claims:

(1) Petitioner was denied his Fifth, Sixth and Fourteenth Amendment rights when his appellate counsel failed to raise *all* Petitioner's meritorious claims on appeal, and;

(2) An evidentiary hearing is necessary to develop Petitioner's ineffective assistance of counsel claim. (*See* Pet. Mem., ECF No. 1; Traverse, ECF No. 19.)

## V.

## DISCUSSION

For the following reasons, the Court finds that Petitioner is not entitled to habeas relief. The Court therefore **RECOMMENDS** the Petition be **DENIED**.

**A.    Standard of Review**

This action was initiated after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. A decision may also involve an unreasonable application "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . ." *Williams*, 529 U.S. at 412. In order to satisfy section 2254(d)(2), a federal habeas petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 786-87 (2011). The Supreme Court has stated that "[i]f this standard is

difficult to meet, that is because it was meant to be . . . [as it] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court decision conflicts with this Court's precedents." Id. at 786 ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.") (internal quotation marks omitted).

**B.  Ineffective Assistance of Appellate Counsel**

Petitioner contends he was denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel because his appellate counsel did not raise the following issues:

**1.)  Trial counsel's failure to object to the second amended information.**

Specifically, Petitioner complains his appellate counsel did not raise trial counsel's failure to object to the second amended complaint, which allegedly contained different offense dates than those identified in the first amended complaint.  (Pet. Mem., ECF No. 1 at 31; Traverse, ECF No. 19 at 6-7.)

Respondent contends California law gives the state court authority to allow an amendment to the complaint at any time during the proceedings to correct an insufficiency as long as the amendment occurs before the issuance of a verdict or judgment.  (Ans. Mem., ECF No. 12-1 at 12:21-28.) Respondent argues the amended complaint, which merely reflected a correction in the dates of the offense at issue, was proper and did not prejudice Petitioner's defense; therefore, appellate counsel was not ineffective for failing to raise a meritless issue.  *Id.* at 13:11-15.

Petitioner presented this ineffective assistance claim to the California Supreme Court in a petition for review. (Resp't Lodgment No. 15, ECF No. 13-30.) The California Supreme Court summarily denied the Petition as successive/untimely, citing *In re Clark*, 5 Cal. 4th 750, 767-769 (1993). (Resp't Lodgment No. 16, ECF No. 13-31.)  This claim was also raised in the state appellate court, which denied the contention on the merits. (Resp't Lodgment No. 12, ECF No. 13-27.)  "Where there has been one reasoned state

judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06 (1991). The Court will apply 28 U.S.C. § 2254(d) to the appellate court opinion, which stated:

> Petitioner's fourth contention, regarding the alleged "variance" in the dates of the crimes between the first and second amended information, lacks merit because the petitioner has not shown any prejudice. Petitioner has not alleged, for example, that counsel was not prepared to defend the case based on the change in the dates, and that "but for" counsel's failure to object, the result would have been different. (*See Strickland v. Washington* (1984) 466 U.S. 668, 687.) Finally, regarding petitioner's contention that appellate counsel was ineffective for failing to raise the issues in this petition, counsel's performance was not deficient because .... the remaining contentions fail, petitioner cannot show the appellate result would have been different had appellate counsel raised them. (*See Smith v. Robbins* (2000) 528 U.S. 259, 285.)

(Resp't Lodgment No. 12, ECF No. 13-27 at 1-2.)

It is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*." *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). A petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Specifically, Kennerson must show counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. He must then show he was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 694. To establish prejudice, Petitioner must demonstrate he would have prevailed on appeal absent counsel's errors. *Smith*, 528 U.S. at 285.

The Ninth Circuit has observed:

> [Strickland's] two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. . . . Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason-because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989).

Here, Petitioner is unable to demonstrate that his appellate counsel rendered constitutionally ineffective assistance by failing to present a meritless claim on appeal. *Bailey v. Newland*, 263 F.3d 1022, 1028 (9th Cir. 2001); *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991); *Gustave v. United States*, 627 F.2d 901, 906 (9th Cir. 1980). As explained in *People v. Winters,* 221 Cal. App. 3d 997 (1990),

> "Section 1009 [of the California Penal Code] authorizes amendment of an information *at any stage of the proceedings provided the amendment does not change the offense charged in the original information to one not shown by the evidence taken at the preliminary examination....* Moreover, a trial court correctly exercises its discretion by allowing an amendment of an information to properly state the offense at the conclusion of the trial. Similarly, where the amendment makes no substantial change in the offense charged and requires no additional preparation or evidence to meet the change, the denial of a continuance is justified and proper."

*See Winters,* 221 Cal. App. 3d at 1005 (emphasis added).

The amendment of which Petitioner complains did not change the perpetrator, the victims or the crimes alleged. Thus, the amendment was permissible under California law and appellate counsel's decision not to raise this meritless argument was not ineffective. *See Miller*, 882 F.2d at 1434*; see also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (explaining counsel is not under an obligation to file "kitchen-sink briefs" on appeal.)

In addition, Petitioner has not shown he was prejudiced by appellate counsel's failure to present the claim on appeal because the difference between the dates of the crimes identified in the first and second amended complaints had no effect on the defense of the case against Petitioner. In sum, no additional preparation or evidence was needed to present a defense. The variance in time frames between the amended complaints was immaterial to Petitioner's defense, which was that he did not molest Christian, Carla and Nancy.

The Court finds the state court's adjudication of this claim did not involve an unreasonable application of clearly established federal law. *Strickland*, 466 U.S. at 687; *Bailey*, 263 F.3d at 1028; *Featherstone*, 948 F.2d at 1507. Therefore, **IT IS RECOMMENDED** that habeas relief as to Petitioner's ineffective assistance of appellate

1   counsel claim for failure to raise trial counsel's lack of objection to the second amended

2   complaint be **DENIED**.

3       **2.)  Trial Court's Failure to Allow A Witness to be Recalled**

4       In support of his ineffective assistance of appellate counsel claim, Petitioner also

5   argues his appellate counsel did not raise on appeal the trial court's denial of his request

6   for a continuance in order to recall a witness to the stand during the presentation of the

7   defense case.  (Pet. Mem., ECF No. 1 at 32; Traverse, ECF No. 19 at 4-5.)

8       Respondent argues Petitioner's ineffective assistance of counsel claim fails

9   because, contrary to Petitioner's contentions, appellate counsel did raise the trial court's

10  denial of Kennerson's request for a continuance on appeal.  (Ans. Mem., ECF No. 12-1

11  at 15:5-6.)

12      The Court has reviewed the state court record in this matter and confirmed the

13  issue of the trial court's denial of the requested continuance *was* raised on direct appeal

14  by Kennerson's appellate counsel.   (Lodgment No. 3, ECF No. 13–18 at 24-31.)

15  Furthermore, the issue was considered and addressed by the appellate court in its

16  unpublished written opinion filed June 10, 2010.   (Lodgment No. 6, ECF No. 13-22.)

17  In pertinent part, the appellate court reasoned:

18      "In his first argument on appeal, Kennerson contends the trial court abused its
        discretion in failing to grant his motion for a continuance.

19

20      1.  Background

21      Christian's mother had testified for the prosecution and was excused subject to
        recall.  At the close of the defense case, Kennerson in fact asked that Christian's
        mother be recalled.  Kennerson wanted to cross-examine Christian's mother with
22      respect to a 2004 written statement she had given school official's explaining
        Christian's long absence from school.  In the 2004 statement, Christian's mother
23      stated Christian had been a 'victim in on-going trial.'  Because the complaint in
        this case was not filed until 2007, Kennerson's counsel wanted to know whether
24      the statement referred to another alleged molestation or whether it otherwise
        undermined Christian's credibility.  Although the trial court did attempt to recall
25      Christian's mother, before doing so it stated: 'That's all very mysterious and
        dramatic and interesting.  I am failing to see a connection between [Christian's
26      mother] wanting to get her kid into alternative education in March of '04, and how
        that is relevant to things that happened, if they did, molests in '99, 2001, divulging
27      the molest in 2002.  If there are inconsistencies, they seem to be consistencies, if
        they exist at all, on peripheral matters that were inquired into years after the
28      alleged molest occurred, and after they were disposed of.  I'm trying to – I am
        trying to find a reason, which is where you are going, to delay this trial so that you

-11-

can get [Christian's mother] in here to testify about these matters. Right now I am having a hard time finding sufficient relevancy for them to allow that type of delay."

Christian's mother was unable to return to court before the close of the defense case because of transportation and child care issues. Kennerson moved to continue the trial, and the trial court noted the statement as to why Christian had been out of school was not in the same handwriting as the signature and found that, in any event, the statement did not provide sufficient cause to warrant a continuance.

2. Analysis

"A continuance in a criminal case may be granted only for good cause [Citation.] Whether good cause exists is a question for the trial court's discretion. [Citation.] The court must consider 'not only the benefit which the moving party anticipates but also the likelihood that such benefit will result, the burden on other witnesses, jurors and the court and, above all, whether substantial justice will be accomplished or defeated by a granting of the motion.' [Citation.] While a showing of good cause requires that both counsel and the defendant demonstrate they have prepared for trial with due diligence [citation], the trial court may not exercise its discretion 'so as to deprive the defendant or his attorney of a reasonable opportunity to prepare.' [Citation.].....Here the trial court acted well within the bounds of its discretion in denying the motion to continue. Although Christian's mother was certainly an important witness, she was by no means the principal witness against Kennerson and in fact was not a witness to any act of molestation. The only relevant testimony she offered was about Kennerson's apparently suspicious behavior and what Christian told her. As the trial court indicated, any inconsistency between her trial testimony and the statement she made to Christian's school was largely collateral to the issues presented at trial. Thus, under all the circumstances, the trial court could reasonably conclude the burden on the parties and the jury created by the delay in the proceedings far outweighed any potential benefit to Kennerson. Accordingly, the trial court did not abuse its discretion in denying the motion to continue."

(Lodgment No. 6, ECF No. 13-22 at 30-32.)

Petitioner also raised the issue of the trial court's denial of a continuance in each of his state court habeas petitions. With respect to this issue in Kennerson's first state habeas petition, the superior court held:

"With regard to the issue that the Petitioner's constitutional rights were violated by the trial court when it failed to grant a continuance and order the production of Socorro and Christian as witnesses, *this issue was litigated in Petitioner's appeal from the conviction*....Petitioner does not demonstrate an exception to the general rule that issues that were raised and litigated on direct appeal may not be revisited on habeas corpus.....Appellate counsel has the right and duty to review a case and present only the strongest claims. After reviewing Petitioner's present petition, the Petitioner has not set forth any meritorious claims or issues that counsel failed to raise in the appeal. "

(Lodgment No. 10, ECF No. 13-25 at 2-3, 5.)  (emphasis added.)

In response to this same issue, which was also included in Petitioner's second state habeas petition, the appellate court held:

Petitioner contends that: ... (2) the court erred in refusing to allow a continuance to recross-examine certain witnesses; ... Petitioner's first two contentions were raised and rejected on direct appeal and are therefore procedurally barred as repetitive. (In re Martinez (2009) 46 Cal.4th 945, 950, fn.1, 956)... Finally, regarding petitioner's contention that appellate counsel was ineffective for failing to raise the issues in this petition, counsel's performance was not deficient because, as explained above, she raised the first two contentions on appeal."

(Lodgment No. 12, ECF No. 13-27 at 1-2.)  (emphasis added.)

The issue of the trial court's denial of a continuance was also raised in Petitioner's third and fourth state habeas petitions.  The California Supreme Court denied both of the petitions respectively without comment or citation on June 13, 2012, and citing to *In re Clark*, 5 Cal. 4th 750, 767-769 (1993), on October 24, 2012.  (Resp't Lodgment Nos. 14 & 16.)

Petitioner cannot demonstrate his appellate counsel failed to raise the issue of the trial court's denial of a continuance on appeal and therefore fell below an objective standard of reasonableness.  *See Strickland*, 466 U.S. at 691 (explaining that in order to establish appellate counsel's representation failed to meet Sixth Amendment standards, petitioner must show: (1) performance fell below an objective standard of reasonableness and (2) prejudice.)   As recounted above, this Court's review of the state court record reveals the issue *was* raised on direct appeal and in subsequent state habeas corpus petitions where it was considered by the state superior court, California Court of Appeal and the California Supreme Court under the test enunciated in *Strickland*.  Accordingly, the state courts' denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  The Court **RECOMMENDS DENYING** habeas relief on Petitioner's ineffective assistance of appellate counsel claim for failure to raise the trial court's denial of a continuance to recall witnesses.

**3.)   Trial Court's Allowance of and Prosecution's Use of Alleged "False Testimony"**

In support of his argument that the trial court and the prosecution colluded to present false evidence or suppress exculpatory evidence at trial, Petitioner contends appellate counsel should have raised the following issues on appeal: a) the prosecution's failure to produce various juvenile records, school records and custody records for victim

Christian; b) the trial court's preclusion of the cross-examination of witness Nancy Spencer regarding her mental condition; and c) the introduction of victim Carla's unreliable videotaped interview into evidence. (Pet. Mem., ECF No. 1 at 27, 32-33; Traverse, ECF No. 19 at 8-10.)

As to Petitioner's three contentions, Respondent argues the first two issues concerning victim Christian's school records and victim Nancy's mental condition were raised by Petitioner's appellate counsel on appeal and rejected by the California Court of Appeal. As for the third issue concerning the reliability of Carla's video-taped interview, Respondent argues it is not a meritorious issue; thus, Petitioner's appellate counsel had no obligation to raise it on appeal (Ans. Mem., ECF 12-1 at 16:8-16.)

### a.) Prosecution's Failure to Produce Juvenile, School and Custody Records for Victim Christian

Petitioner argues appellate counsel did not raise the prosecution's failure to provide various exculpatory records to Petitioner, including juvenile, school and custody records which may have revealed false molestation allegations made by Christian against other men. (Pet. Mem., ECF No. 1 at 32.) The Court notes Petitioner made a related argument in the federal Petition, which was discussed in section B.2 of the instant Report & Recommendation; that appellate counsel failed to raise the trial court's denial of a continuance for the purpose of recalling Christian's mother to cross-examine her on Christian's school records. Although the witness recall issue was addressed by the state courts, Petitioner's related argument concerning the prosecution's alleged failure to provide exculpatory records does not appear to have been raised with any state court and is therefore unexhausted. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). For the court to address an unexhausted claim on the merits, it must be "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir.2005). Because Petitioner fails to raise a colorable ineffective assistance of appellate

counsel claim on the issue of whether the prosecution failed to provide exculpatory records as addressed below, **IT IS RECOMMENDED** the Court exercise its discretion to consider and reject this claim on the merits.  The Court reviews *de novo* unexhausted claims such as the claim presented here.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.2002) (*de novo* review is performed when a state court has not reached the merits of an issue).

Due process requires the prosecution to disclose exculpatory evidence within its possession.  *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Towery v. Schriro,* 641 F.3d 300, 309 (9th Cir.2010).  In *Brady*, the Supreme Court held "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A "'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* Accordingly, in order to establish a *Brady* violation, petitioner must show the material exculpatory or impeaching evidence was suppressed by the state, either wilfully or inadvertently, resulting in prejudice.  *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.ct 1936, 144 L.ed.2d 286 (1999)*; Morris v. Y1st*, 447 F.3d 735, 743 (9th Cir.2006).

Petitioner's *Brady* claim fails because he has not proven the first element; namely that Christian's juvenile, school and custody records were materially exculpatory or impeaching.  As explained in section B.2 of the instant Report & Recommendation, at trial, Petitioner wanted to cross-examine Christian's mother with respect to a 2004 written statement she had given school officials explaining Christian's long absence from school.  In the 2004 statement, Christian's mother stated Christian had been a victim in an on-going trial.  Because the complaint in Kennerson's case was not filed until 2007, his trial counsel wanted to know whether the statement referred to another alleged

molestation or otherwise undermined Christian's credibility.  The Court, however, determined the school record was insufficient to warrant further investigation or a continuance of the trial to attempt impeachment on cross-examination, stating:

THE COURT: **I'M FAILING TO SEE A CONNECTION BETWEEN SOCORRO [Christian's mother] WANTING TO GET HER KID INTO ALTERNATIVE EDUCATION IN MARCH OF '04 AND HOW THAT IS RELEVANT TO THINGS THAT HAPPENED, IF THEY DID, MOLESTS IN '99, 2001, DIVULGING THE MOLEST IN 2002.** IF THERE ARE INCONSISTENCIES, THEY SEEM TO BE INCONSISTENCIES, IF THEY EXIST AT ALL, ON PERIPHERAL MATTERS THAT WERE INQUIRED INTO YEARS AFTER THE ALLEGED MOLEST OCCURRED, AND AFTER THEY WERE DISPOSED OF....**RIGHT NOW I AM HAVING A HARD TIME FINDING SUFFICIENT RELEVANCY.**

(Resp't Lodgment 2, ECF No. 13-14 at 114.)

THE COURT: OKAY.  THANK YOU.  THE REQUEST TO CONTINUE THE TRIAL TO GET SOCORRO IN HERE AND/OR HER DAUGHTER CHRISSY IS DENIED.  THE COURT DOES NOT FIND GOOD CAUSE TO DO SO AT THIS TIME.  I HAVE LOOKED THROUGH ED21239.  IT IS, INDEED, A DISSOLUTION FILE THAT STARTED IN ABOUT 1994.  IT WAS DORMANT FOR SEVERAL YEARS THEREAFTER.  IT WAS PICKED UP BACK AGAIN, FROM WHAT I CAN TELL, A FAIRLY STANDARD-LOOKING DISSOLUTION FILE.....BUT FOR WHATEVER AREAS THERE ARE THAT MIGHT BE POTENTIAL INCONSISTENCIES IN SOCORRO'S TESTIMONY, **I DO NOT FIND THAT A CONTINUANCE OF THE TRIAL IS SUFFICIENT – IS WARRANTED BY THE EVIDENCE I HAVE IN FRONT OF ME, THE DIVORCE FILE AND A SINGLE-PAGE DOCUMENT FROM THE SCHOOL RECORDS THAT I PRESERVED WITH THE COURT FILE AS A COURT'S EXHIBIT.**

(WHEREUPON COURT'S 3, REQUEST FOR TRANSFER TO ALTERNATIVE EDUCATION WAS MARKED FOR IDENTIFICATION)

THE COURT: **IT HAS INFORMATION IN IT THAT SOCORRO HAS**

-16-

1
2
3
4
5
6

**SAID.** THERE MAY OR MAY NOT BE SOME KIND OF OTHER PROCEEDINGS. **THE INFORMATION REGARDING THE FACT THAT SHE WAS OUT AS A VICTIM IN A TRIAL IS IN A DIFFERENT HANDWRITING FROM SOCORRO'S SIGNATURE ON THE DOCUMENT.** BUT BE THAT AS IT MAY, MS. LACHER, I HAVE CONSIDERED THIS, AND **I DON'T FIND GOOD CAUSE TO CONTINUE THE CASE TO ALLOW FURTHER INVESTIGATION.**

7
(Resp't Lodgment 2, ECF No. 13-14 at 126-127.)

8      **IT IS RECOMMENDED** the Court find Petitioner has failed to establish the

9 materiality element of a *Brady* violation.  The school record at issue, which suggested

10 Christian's involvement in some kind of court proceeding in 2004, was immaterial to the

11 issue of Kennerson's molestation of Christian in 1999 and 2001 and would not have

12 changed the result of the proceeding given Christian's direct testimony against

13 Kennerson.  Petitioner has presented no evidence to demonstrate other school, juvenile

14 or custody records would have "put the case in such a different light as to undermine

15 confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 433-35, 115 S.Ct. 1555, 131

16 L.Ed.2d 490 (1995).  Moreover, Petitioner's appellate counsel was not ineffective for

17 failing to raise the issue of whether the prosecution should have provided, or the Court

18 should have allowed investigation into additional school, juvenile and custody records

19 on appeal because such an argument is without merit.  "A petitioner [is] not prejudiced

20 by appellate counsel's decision not to raise issues that had no merit." *Featherstone v.*

21 *Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991); *see also Gustave v. United States*, 627 F.2d

22 901, 906 (9th Cir. 1980) ("There is no requirement that an attorney appeal issues that are

23 clearly untenable.").  Therefore, **IT IS FURTHER RECOMMENDED** the Court find:

24 (1) Petitioner cannot demonstrate his appellate counsel failed to raise a meritorious issue

25 and therefore fell below an objective standard of reasonableness.  *(See Strickland*, 466

26 U.S. at 691.); and (2) **DENY** habeas relief as to Petitioner's ineffective assistance of

27 appellate counsel claim for failure to raise the issue of allegedly exculpatory records on

28 appeal.

### b.)  Trial court's Preclusion of the Cross-Examination of Witness Nancy Spencer

Petitioner cannot demonstrate his appellate counsel failed to raise the issue of the trial court's preclusion of the cross-examination of witness Nancy Spencer regarding her mental condition.  After review of the state court record, this Court has confirmed the issue of the trial court's denial of Petitioner's request to cross-examine Nancy Spencer about her mental condition was raised on direct appeal by Kennerson's appellate counsel. (Lodgment No. 3, ECF No. 13–18 at 42-49.)  Furthermore, the issue was considered and addressed by the appellate court in its unpublished written opinion filed June 10, 2010.  (Lodgment No. 6, ECF No. 13-22.)  In pertinent part, the appellate court reasoned:

"Finally, Kennerson argues the trial court erred in preventing him from cross-examining Nancy with respect to her hospitalization and mental state at the time she first reported Kennerson's molestation of her.  Again we find no error.

Nancy was molested by Kennerson between 1988 and 1995.  In 2002, several years after the molestation ceased, Nancy was admitted to Sharp Mesa Vista Hospital on four separate occasions.  While she was in the hospital, Nancy reported the molestations to therapists and police. Kennerson subpoenaed Nancy's hospital records which disclosed Nancy had been using alcohol, marijuana and methamphetamine at or near the time some of the molestations occurred and that she suffered from suicidal thoughts, hallucinations and other psychiatric disorders.

At trial, the court concluded an Evidence Code section 402 hearing with respect to Nancy's testimony, and she candidly admitted that at the time of her hospitalization and report of the molestations she was not thinking clearly and was taking medication.  By way of an in limine motion ruling, the trial court prevented Kennerson from cross-examining Nancy with respect to her hospital stay or mental state at the time she reported the molestations in 2002.  The trial court stated: 'To allow examination in detail of her mental problems that occurred in 2002 and that were being treated, and successfully so, which appear to have been caused by Kennerson, is a bootstrap argument that simply lacks relevance to anything that is going on in this trial.  I look carefully for what I thought would be admissible evidence from the hospital records, and that would be any statements that she may have made to anybody that were inconsistent with what I heard her say during the 402 hearing, but there were none.'

Although Nancy did not testify about her hospitalization in front of the jury, at trial she did admit she had begun using alcohol, marijuana and methamphetamine when she was 17, that she had been date raped twice, and that when she spoke to police in 2002 she was unsure that Kennerson had raped her.....

Like the trial court, we find Nancy's mental state and psychiatric treatment at the time she first reported the molestations in 2002 were not relevant to the issues presented at trial.....Here, the molestations occurred several years before her hospitalization and the hospitalization occurred several years before her 2008 testimony.  Moreover, nothing in the medical records disclosed any statement

-18-

1
2
3

which was inconsistent with Nancy's testimony about Kennerson's conduct.... The collateral nature of the inquiry, especially here, where Kennerson was not charged with molesting Nancy, also of course shows that any error by the trial [court] would not have been prejudicial. "

(Lodgment No. 6, ECF No. 13-22 at 39-41.)

4
5
6
7
8
9
10
11
12
13
14
15
16

Petitioner cannot establish his appellate counsel failed to raise the trial court's preclusion of a cross-examination of witness Nancy Spencer and therefore fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 691.   Petitioner's appellate counsel did raise the issue and the appellate court found no prejudice to Kennerson as a result of the trial court's exclusion of Nancy's mental condition as a subject of cross-examination. *See Strickland*, 466 U.S. at 691 (explaining that in order to establish appellate counsel's representation failed to meet Sixth Amendment standards, petitioner must show: (1) performance fell below an objective standard of reasonableness and (2) prejudice.)  Accordingly, the Court **RECOMMENDS DENYING** habeas relief as to Petitioner's ineffective assistance of appellate counsel claim for failure to raise the trial court's preclusion of the cross-examination of Nancy Spencer as to her mental state and hospitalization.

17
18
19
20
21
22

### c.) Introduction of Victim Carla's Videotaped Interview into Evidence.

Petitioner argues the trial court should not have allowed the introduction of victim Carla's videotaped interview into evidence because it was unreliable.  Specifically, Petitioner claims the videotaped interview was unreliable because earlier interviews Carla had with the National City Police Department and Child Protective Services were not videotaped.   (Pet., ECF No. 1 at 33.)

23
24
25
26
27
28

This specific claim appears to be unexhausted.  "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).  For the court to address an unexhausted claim on the merits, it must be "perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623–24 (9th Cir.2005).   Because Petitioner fails to raise a colorable ineffective assistance of appellate counsel claim as to the reliability of the videotaped interview as

explained below, **IT IS RECOMMENDED** the Court exercise its discretion to address and reject this claim on the merits.  The Court reviews *de novo* unexhausted claims such as the claim presented here.  *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir.2002) (*de novo* review is performed when a state court has not reached the merits of an issue).

At Petitioner's trial, the prosecution moved into evidence Child Protective Services' videotaped interview with eight-year-old victim Carla regarding her allegation that Petitioner molested her.  (Reporter's Transcript, ECF No. 13-10 at 33.)  Petitioner's trial counsel did not object to the introduction of the videotaped interview as the Reporter's Transcript indicates:

MS GRASSO:     YOUR HONOR, AT THIS TIME WE WOULD LIKE TO PLAY THE TAPE.

THE COURT:     **YES.    FIRST, MS. LACHER, ANY VOIR DIRE REGARDING THE FOUNDATION AT THIS POINT?**

MS. LACHER:    **NO, YOUR HONOR.**

THE COURT:     OKAY.   LADIES AND GENTLEMEN, THERE IS A VIDEOTAPE THAT YOU ARE GOING TO BE ABLE TO WATCH.  I AM TOLD IT'S AROUND 45 MINUTES OR SO.  THE MACHINE WILL BE PULLED OVER NOW TO A POINT WHERE EVERYONE CAN SEE IT, EXCEPT FOR ME, WHICH MEANS I WILL HAVE TO GO OVER TO THE BAILIFF'S AREA.

A COUPLE OF THINGS BEFORE WE GET STARTED. THERE IS A TRANSCRIPT OF WHAT IS ON THE VIDEOTAPE.   THIS TRANSCRIPT, YOU ARE EACH GOING TO HAVE A COPY OF IT, THE TRANSCRIPT IS SIMPLY ONE PERSON'S, A TRANSCRIBER, NOBODY WHO IS HERE, THE TRANSCRIBER WHO WATCHED THIS, HIS OR HER INTERPRETATION OF WHAT WAS SAID IN THE WRITTEN WORD.  NOW, THERE MAY BE DISCREPANCIES, SLIGHT ONES, BETWEEN WHAT YOU HEAR ON THE TAPE AND WHAT YOU READ IN THE   TRANSCRIPT.    IF   THERE    IS   SUCH   A DISCREPANCY, WHAT YOU HEAR AND SEE ON THE TAPE IS EVIDENCE, AND THAT'S WHAT YOU ARE TO ACCEPT, AND NOT WHAT THE TRANSCRIBER MAY HAVE   SAID   OR   WRITTEN   IF   THERE   IS   A DISCREPANCY.

( Reporter's Transcript, ECF No. 13-10 at 38:22-39:17.)

Under clearly established federal law, a state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law by infringing upon

-20-

a specific constitutional or federal statutory provision or by depriving the defendant of a fair trial guaranteed by due process. *See Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir.1991). Accordingly, a federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was arbitrary or so prejudicial as to render the trial fundamentally unfair. *See Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995); *Colley v. Summer*, 784 F.2d 984, 990 (9th Cir.1986).

Specifically, Petitioner must demonstrate the evidentiary error at issue was constitutional in dimension and was not harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The court must find that the error had " 'a substantial and injurious effect' on the verdict." *Dillard v. Roe*, 244 F.3d 758, 767 n. 7 (9th Cir.2001) (quoting *Brecht*, 507 U.S. at 623).

Here, Petitioner challenges the reliability of Carla's videotaped interview. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004). The admission of Carla's videotaped interview, however, did not violate the Constitution's confrontation requirement because Kennerson's counsel had an opportunity to confront Carla, who testified at the trial and was cross–examined. (Reporter's Transcript, ECF No. 13-9 at 64:6-97:7.) In addition, the social worker who conducted the videotaped interview of Carla testified and was cross-examined by Kennerson's counsel. (Reporter's Transcript, ECF No. 13-10 at 26:26-54:16.) There is no evidence in the record to demonstrate Carla's video-taped interview was unreliable. Moreover, there is no indication that admission of the videotape into evidence had a substantial and injurious effect on the verdict. In addition to the videotape presentation, the jury heard live testimony from both Carla and Lisa McCulloch, the social worker who conducted the video-taped interview. As a result, it cannot be said that the jury's verdict would have been substantially different had the videotape been excluded. Accordingly, even if there

was error, which there was not, it was harmless.  *Brecht*, 507 U.S. at 623.  Because Petitioner's contention that the videotaped interview is unreliable is without merit, appellate counsel was under no obligation to raise the argument on appeal.  *Smith*, 528 U.S. at 285.  Therefore, appellate counsel's failure to raise this issue on appeal does not constitute ineffective assistance.  The Court **RECOMMENDS DENYING** habeas relief as to Petitioner's ineffective assistance of appellate counsel claim for failure to raise the reliability of Carla's video-taped-interview as an issue for appeal.

### C.    Request for Evidentiary Hearing

AEDPA prescribes the manner in which federal courts must approach the factual record and "substantially restricts the district court's discretion to grant an evidentiary hearing."  *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999); *Cullen v. Pinholster*, 131 S.Ct 1388, 1400-01 (2011) ("Section 2254(e)(2) imposes a limitation on the discretion of federal habeas courts to take new evidence in an evidentiary hearing").  Furthermore, "[b]ecause a federal court may not independently review the merits of a state court decision without first applying the AEDPA standards, a federal court may not grant an evidentiary hearing without first determining whether the state court's decision was an unreasonable determination of the facts."  *Earp v. Ornoski*, 431 F.3d 1158, 1166-67 (9th Cir. 2005), *citing Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *see Schriro v, Landrigan*, 550 U.S. 465, 474 (2007) ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate").  "In practical effect, . . . this means that when the state-court record 'precludes habeas relief' under the limitations of § 2254(d), a district court is 'not required to hold an evidentiary hearing.' "  *Cullen*, 131 S.Ct. at 1401, 1399, *quoting Schriro*, 550 U.S. at 474.

"If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  *Cullen*, 131 S.Ct. at 1400.  If a claim subject to 28 U.S.C. § 2254(d)(1) "does not satisfy that statutory requirement, it is "unnecessary to reach the question

whether § 2254(e)(2) would permit a [federal] hearing on th[at] claim." Id., *quoting Williams v. Taylor*, 529 U.S. 420, 444 (2000). For the reasons discussed herein, it is recommended the Court find that none of Kennerson's claims warrants federal habeas relief under 28 U.S.C. § 2254(d)(1). By its terms, 28 U.S.C. § 2254(d)(2) restricts federal habeas review to the state court record. Accordingly, **IT IS RECOMMENDED** that Petitioner's request for an evidentiary hearing be **DENIED**.

**VI.**

**CONCLUSION AND RECOMMENDATION**

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **July 26, 2013**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 26, 2013.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

DATED: June 25, 2013

Hon. William McCurine, Jr.
U.S. Magistrate Judge
U.S. District Court